<u>**NOT FOR PUBLICATION**</u>

**UNITED STATE DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIE KAY BETTS, | Civil Action No. 14-06357-SDW-LDW |
| Plaintiff, | |
| v. | **OPINION** |
| SUMMIT OAKS HOSPITAL, | January 10, 2017 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant Summit Oaks Hospital's ("Defendant") Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to FED. R. CIV. P. 78. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

Defendant Summit Oaks Hospital is a substance abuse and mental health treatment center located in Summit New Jersey. (Dkt. No. 61-3 ("Phillips Cert.") ¶ 2.) Defendant hired Plaintiff Willie Kay Betts ("Plaintiff") as a full-time nurse in November 2011. (Def.'s Statement of Material Facts ("SMF") ¶ 1.) As part of her employment, Plaintiff was primarily assigned to Defendant's Rehabilitation Unit, "TU2." (*Id*. ¶ 2.) Although TU2 was considered Plaintiff's "home unit," she was, at times, also assigned to work in Defendant's Detoxification Unit, "TU3." (Def.'s SMF ¶¶ 3-

4; Pl.'s SMF ¶ 3.) Summit Oaks Hospital regularly requires its employees to temporarily staff units that are not the employees' home units in order to satisfy the hospital's staffing needs. (Def.'s SMF ¶ 4; Pl.'s SMF ¶ 4.) According to Defendant, such temporary staffing, referred to by the parties as "floating," is consistent with the hospital's written policy for the management of nursing personnel. (*See* Def.'s Br. Supp. Mot. Summ. J. ("Def.'s Br. Supp.") at 3; Phillips Cert., Ex. A ("Daily staffing is adjusted according to census, patient acuity, and the availability of staff.").) However, Plaintiff takes issue with her staffing of TU3.

According to Plaintiff, she was assigned to TU3 "for the greater part of 2012." (Pl.'s SMF ¶ 3.) Although Plaintiff concedes that she was not officially transferred to TU3, she claims that she was staffed exclusively in TU3 until either late 2012 or early 2013. (Dkt. No. 61-2, Ex. B. ("Betts Dep.") at 55:1-19.) In addition, Plaintiff contends that after she returned to TU3 in late 2012 or early 2013, she was floated to TU3 more often than other nurses until she resigned from the hospital on August 1, 2015. (Pl.'s Br. Opp. Mot. Summ. J. ("Pl.'s Br. Opp.") at 2; Pl.'s SMF ¶ 8.). Specifically, Plaintiff contends that she was floated "twice as much as Mikola [Mikolav]," the only other full-time day shift nurse assigned to TU2. (*Id*.; Def.'s SMF ¶ 6.)[1] Plaintiff also asserts that she was floated to TU3 more often than Defendant's per-diem and part-time nurses. (Pl.'s Br. Opp. at 2.) According to Plaintiff, she was disproportionately assigned to TU3 because of her race and color. (Compl. ¶ 9.)

In contrast, Defendant first contends that from 2013 to 2015, Mikolav was floated to TU3 nearly as often, and at times more often, than Plaintiff. (Phillips Cert. ¶ 8.)[2] In addition, Defendant

---

[1] Mikola Mikolav ("Mikolav") is Caucasian. (Pl.'s SMF ¶ 4.) Although Plaintiff does not appear to state her race or color, the Complaint does state she was not treated "as fairly as [her] white co-workers." (Compl. ¶ 9.) Defendant states in its Motion that Plaintiff is "black." (Def.'s Br. Supp. at 3.)
[2] Defendant's submissions state that from 2013 to 2015, Plaintiff was floated to TU3 18%, 12%, and 7% of the time, respectively. (Phillips Cert. ¶ 8.) From 2013 to 2015 Mikolav was floated 14%, 14%, and 7%, respectively. (*Id*.) Although Plaintiff complains that some of the time sheets Defendant turned over during

2

asserts that floating Plaintiff to TU3 served the hospital's staffing needs and that there is no hospital policy requiring that full-time nurses be given staffing preferences over per-diem nurses. (Def.'s SMF ¶ 9.) Finally, Defendant points out that although Plaintiff was floated to TU3, this did not affect Plaintiff's title, pay, or employment benefits. (*Id.* ¶ 7.)

As a result of her dissatisfaction with being assigned, at times, to TU3, Plaintiff filed a charge of discrimination with the New Jersey Division of Civil Rights on May 24, 2013. (Compl. ¶ 6.) Plaintiff subsequently filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on August 6, 2013. (Phillips Cert., Ex. E.) The EEOC conducted an investigation and, on July 28, 2014, issued a right-to-sue letter detailing the EEOC's determination that Defendant had discriminated against Plaintiff. (Compl. at 5.) However, the EEOC declined to file suit against Defendant and advised Plaintiff of her right to file a private lawsuit within ninety days of receipt of the letter. (*Id.*) On October 14, 2014, Plaintiff commenced the instant action. (Dkt. No. 1.)

According to the Complaint, Defendant discriminated against Plaintiff on the basis of her race and color in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq. ("Title VII") by (1) not treating her "as fairly as . . . [her] white co-workers"; (2) not offering her "equal assignments . . . as a full time employee, as opposed to per diem and part time employees"; and (3) by failing to address her "complaints regarding discriminatory behavior" towards her by her co-workers. (Compl. ¶ 9.) At this stage of the case, it appears that these claims

---

discovery were "sanitized" using white-out, Plaintiff does not specify whether the time sheets from which Defendant gathered this specific information, comparing how often Mikolav and Plaintiff were floated to TU3, were affected. Nonetheless, as explained below, this Court's decision does not depend on a determination of whether Plaintiff was floated to TU3 more often than Mikolav.

boil down to Plaintiff's contention that she was assigned to TU3 more often than other nurses because of her race or color. (*See generally* Pl.'s Br. Opp.)

Defendant moved for summary judgment in this matter, pursuant to FED. R. CIV. P. 56, on August 26, 2016. (Dkt. No. 61.) Plaintiff filed a brief in opposition on September 6, 2016, (Dkt. No. 62), and Defendant filed a brief in reply on September 13, 2016. (Dkt. No. 66.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-moving party to set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions, or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d

Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The non-moving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the non-moving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322-23.) If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The non-moving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. Appx. 548, 554 (3d Cir. 2002).

5

**III. DISCUSSION**

As discussed above, Plaintiff contends that Defendant violated Title VII by floating her to TU3 more often than other nurses during her employment at Summit Oaks Hospital.[3] Under Title VII, it is an "unlawful employment practice for an employer":

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2. In considering Plaintiff's claim under Title VII, this Court must first apply the *McDonnell Douglas* burden-shifting test, which places the initial burden on a plaintiff to establish a *prima facie* case of discrimination. *See Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 763 (3d Cir. 2004), *as amended* (Dec. 20, 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a *prima facie* case of discrimination under Title VII, Plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she was otherwise qualified for the position; (3) that she has suffered an adverse employment action; and (4) that the adverse action occurred under circumstances that give rise to an inference of discrimination. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 412 (3d Cir. 1999).

---

[3] Under 42 U.S.C. § 2000e-5(e)(1), if a plaintiff initially institutes proceedings with a state or local agency, a charge of discrimination must be filed with the EEOC within 300 days after an unlawful employment practice occurs. Because Plaintiff filed her charge of discrimination with the EEOC on August 6, 2013, her claim may not be based on discrete acts of discrimination that occurred before October 10, 2012. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.") As a result, this Opinion focuses on Plaintiff's staffing of TU3 on and after October 10, 2012.

Once a plaintiff establishes a *prima facie* case of discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for" its employment action. *McDonnell Douglas Corp*, 411 U.S. at 802. If the employer satisfies this burden, the burden then shifts back to the plaintiff to show that the employer's purported reason for the adverse employment action was "in actuality a pretext for intentional race discrimination." *Jones,* 198 F.3d at 412.

Regarding step one of the *McDonnell Douglas* test, establishing a *prima facie* case of discrimination, Defendant argues that Plaintiff failed to demonstrate that she suffered an adverse employment action. (Def.'s Br. Supp. at 9-12.) An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Storey*, 390 F.3d at 764 ("We have defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (citation omitted))). In this instance, Plaintiff was tasked with working, at times, in TU3 when her preferred unit was TU2. (Pl.'s SMF ¶¶ 2-3; Pl.'s Br. Opp. at 3.) However, "[m]inor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions." *Langley v. Merck & Co.*, 186 F. App'x 258, 260–61 (3d Cir. 2006). Although Plaintiff expressed her preference to work only in TU2, and contends that in TU3 "you do the work of five people," (Betts Dep. at 251:18-20), she has not submitted any evidence to show that being floated, or even transferred to TU3, had a tangible impact on her employment. Plaintiff's title, pay, benefits, and terms of employment remained the same throughout her

employment at Summit Oaks Hospital. (Phillips Cert. ¶ 9; Betts Dep. At 251:9-18.) Without more, simply being tasked with working, at times, in a different unit, does not amount to an adverse employment action. *See Swain v. City of Vineland*, 457 F. App'x 107, 110–11 (3d Cir. 2012) (explaining that when "[t]here is no evidence [a plaintiff suffered] any 'serious and tangible' alteration of his compensation, terms, conditions, or privileges of employment . . . . a lateral transfer . . . in and of itself does not amount to a significant change in employment status." (citations omitted)). Plaintiff, having shown only that she was, at most, subjected to repeated temporary lateral transfers, has failed to establish a *prima facie* case of employment discrimination.[4] Accordingly, Defendant is entitled to summary judgment as to Plaintiff's Title VII claim.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is **GRANTED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Magistrate Leda D. Wettre
             Parties

---

[4] Although it does not appear to be addressed in Plaintiff's Opposition, Defendant also suggests that Plaintiff's Title VII claim is based on an incident in which Plaintiff "called ahead for 'take out' lunch from the Hospital dining room and was told that the Hospital does not pack up lunches for employees." (Def.'s SMF ¶ 11.) To the extent Plaintiff did intend this incident to be the basis of another claim under Title VII, such an occurrence is not the type of "significant change in employment status" that could constitute an adverse employment action.

8